USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/22/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARABIA JENNINGS,

Plaintiffs,

-against-

CITY OF NEW YORK, et al.,

Defendants.

22-CV-1885 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Before the Court is Magistrate Judge Cave's Report & Recommendation ("R&R") on the motion for summary judgment in this case, and Plaintiff's objection to many of the conclusions in the R&R. For the reasons set forth below, the R&R is adopted in its entirety, and summary judgment is granted to the Defendants.

## BACKGROUND

On August 29, 2025, Defendants filed their motion for summary judgment, seeking to dismiss Plaintiff's Complaint in its entirety. *See* Dkt. No. 126. ("Pl. Mot."). On February 3, 2026, Magistrate Judge Cave entered the R&R, recommending that this Court grant Defendants' motion for summary judgment in its entirety and enter judgment for Defendants on all claims asserted in the Complaint. Dkt. No. 151 ("R&R").

On February 17, 2026, Plaintiff Arabia Jennings objected to several points in the R&R. Dkt. No. 154 ("Obj."). Specifically, Ms. Jennings asserts that: (1) Judge Cave "discounted and excluded . . . testimonial evidence, including but not limited to Plaintiff's declaration as 'self-serving,' and documentary evidence Plaintiff submitted;" (2) Plaintiff stated a claim of race discrimination under Title VII, Section 1983, the New York State Human Rights Law

("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"); (3) Plaintiff did not abandon her gender-based hostile work environment claim under NYCHRL; (4) the R&R failed to consider "conduct of the Defendant City of New York" in its analysis of Plaintiff's NYCHRL hostile work environment claim; (5) Plaintiff stated a claim of race and gender hostile work environment under NYCHRL; (6) Defendants Winski and Caggiano should not be "shielded from liability by qualified immunity"; (7) the R&R "discounted and excluded from its analysis . . . relevant background evidence of prior acts of discrimination"; (8) the R&R "did not apply the continuing violation doctrine to Plaintiff's race and gender based hostile work environment claims" under NYCHRL; and (9) the R&R "applied the incorrect standard of review to [the] NYSHRL claims" and "fail[ed] to apply the more liberal standard of review articulated in the NYCHRL." *Id.* at 2–3; Dkt. No. 154-1 at 9.

On March 2, 2026, Defendants opposed Plaintiff's objections. Dkt. No. 155 ("Defs. Opp."). Defendants did not file their own independent objections to any aspect of the R&R.

## DISCUSSION

The facts underlying the Plaintiff's claims are extensively outlined in the R&R, familiarity with which is assumed, and which is attached to this Opinion for ease of reference.

## I. STANDARD OF REVIEW ON A REPORT & RECOMMENDATION

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Bradley v. Comm'r of Soc. Sec.*, No. 12-CV-07300 (ER), 2015 WL 1069307, at *1 (S.D.N.Y. Mar. 11, 2015) (same).[1] Under 28 U.S.C.

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

§ 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), parties may submit objections to the Magistrate Judge's report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). When a party submits timely and specific objections to a report and recommendation, the district court is required to make a *de novo* determination of those portions of a report to which objection is made, 28 U.S.C. § 636(b)(1)(C), by reviewing "the Report, the record, applicable legal authorities, along with [the] objections and replies." *Bandhan v. Lab'y Corp. of Am.*, 234 F. Supp. 2d 313, 316 (S.D.N.Y. 2002).

The Court reviews *de novo* any objections to "a specific legal conclusion . . . even if they repeat an argument raised before the magistrate judge." *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 361 (2d Cir. 2025). The district court "may adopt those portions of the . . . report to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)); *see also Alverio v. Colvin*, No. 13-CV-04722 (GBD) (SN), 2015 WL 1062411, at *1 (S.D.N.Y. Mar. 9, 2015) ("When the parties make no objections to the [r]eport [and recommendation], the [c]ourt may adopt [it] if 'there is no clear error on the face of the record.'" (quoting *Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253 (S.D.N.Y. 2005)). A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006).

## II. PLAINTIFF'S OBJECTIONS ARE WITHOUT MERIT

The Court has reviewed Plaintiff's objections and Defendants' opposition to the objections, the record, the applicable legal authorities, and the portions of the R&R to which

Plaintiff objects *de novo*, and concludes that for the reasons stated in Judge Cave's thorough and well-reasoned R&R, Ms. Jennings' objections are largely without merit and, in any case, do not affect the ultimate conclusion of the R&R and of this Court that the motion for summary judgment should be granted.

### A. Discrimination and Retaliation Claims

Ms. Jennings raises a number of objections to Judge Cave's findings on her Title VII, Section 1983, NYSHRL, and NYCHRL discrimination and retaliation claims. As a preliminary matter, the Court will address what it views as "blanket objections" to Judge Cave's treatment of Plaintiff's purported evidence; namely, what Ms. Jennings deems insufficient consideration of her Counter Rule 56.1 statement (Dkt. No. 138), declaration in support of her summary judgment opposition (Dkt No. 139), and accompanying exhibits (Dkt. No. 139-1–139-42). It will then address the objections specific to each of the Title VII, Section 1983, NYSHRL, and NYCHRL claims.

#### 1. Objections to Judge Cave's Treatment of Evidence

Ms. Jennings asserts that Judge Cave effectively granted Defendants' Motion to Strike her declaration and Counter Rule 56.1 statement, Dkt. No. 145, and disposed of her declaration and accompanying exhibits simply by failing to include it in her R&R, without allowing Plaintiff to sufficiently brief the issue. Obj. at 9–14, 12 n.4.

As Judge Cave explained in her denial of Defendants' Motion to Strike, such motions are "disfavored in the Rule 56.1 context" and courts may "simply disregard any improper assertions." Dkt. No. 150 at 1 (quoting *Pearlstein v. BlackBerry Ltd.*, No. 13-CV-07060 (CM) (KHP), 2022 WL 19792, at *7 (S.D.N.Y. Jan. 3, 2022)). Judge Cave was entitled to use her sound discretion in disregarding any improper assertions and, as Defendants note, Judge Cave did not exclude the submission outright, but rather "primarily cite[d]" to Plaintiff's Rule 56.1

Response throughout her recitation of facts and presumably relied on those factual findings in her analysis. *See* Defs. Opp. at 7; R&R at 2 n.1. So too with Plaintiffs' exhibits—there is no indication that Judge Cave failed to consider them in her analysis. *See, e.g.,* R&R at 2 n.1 (Judge Cave noting that she relied on, *inter alia*, Dkt. Nos. 139-1–139-42, 140-1–140-12).

As to Ms. Jennings' declaration, Dkt. No. 139, Judge Cave found it "self-serving" and "uncorroborated testimony" which "does not suffice to defeat summary judgment." R&R at 15 n.7 (citing *Marseille v. Mount Sinai Health Sys., Inc.*, No. 18-CV-12136 (VEC), 2021 WL 3475620, at *10 (S.D.N.Y. Aug. 5, 2021)). Ms. Jennings argues that Judge Cave's decision on this point is "contrary to binding Second Circuit precedent" as articulated in *Knox v. CRC Mgmt. Co.*, 134 F.4th 39 (2d Cir. 2025). Obj. at 10–11.

In *Knox*, the Second Circuit overturned the district court's decision that a "plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." 134 F.4th at 48. Indeed, this Court is not prepared to disqualify Ms. Jennings' declaration solely for being self-serving: "In discrimination cases, the only direct evidence available very often centers on what the defendant allegedly said or did" and that issue "frequently becomes one of assessing the credibility of the parties." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998); *see also Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50–51, 51 n.7 (2d Cir. 2022) (quoting *Danzer*, 151 F.3d at 57) ("[T]o hold . . . that the nonmovant's allegations of fact are (because 'self-serving') insufficient to fend off [summary judgment] would be to thrust the courts—at an inappropriate stage—into an adjudication of the merits."). While Plaintiff is correct that the *Knox* court ultimately held that "a plaintiff is entitled to rely on his own testimony to establish his claim" at summary judgment, 134 F.4th at 48, it carved out two exceptions: a nonmovant's affidavit may be discounted if it (1) "fails to comply

with Federal Rule of Civil Procedure 56(e), in that it is conclusory or not based on the affiant's personal knowledge;" or (2) "create[s] an issue of fact . . . that, by omission or addition, contradicts the affiant's previous deposition testimony." *Id.* at 49 n.3 (first quoting *Danzer*, 151 F.3d at 57 n.5 (2d Cir. 1998); and then quoting *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 483 (2d Cir. 2014)); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("[P]laintiff cannot meet [her] burden through reliance on unsupported assertions.").

Plaintiff's declaration is riddled with statements about which she has no personal knowledge, often regarding events at which she was not present. *See, e.g.*, Dkt. No. 139 at ¶¶ 24 ("Roberson held a meeting with the CLU employees, telling them . . . ."), 26–27 ("Roberson sent out the November 15, 2017 memorandum to the CLU employees" and "tasked the sergeants . . . with reviewing summaries for presentation . . ."), 30–31 ("I am informed that is how Jennifer Cama . . . was promoted to ASA Level II."), 54–55 (Winski "disqualified an African-American candidate" and "commented about another African-American candidate"), 59 ("Pooran, Schmidt, and Ramos were very vocal about their opposition, stating to . . . Roberson and other unit employees . . . ."), 62–65 ("they went to Inspector Ronald Leyson" and "[t]hey complained about Ghoulson, to Leyson and anyone else who would listen . . ."), 73 ("Kobel, masquerading as an internet poster known as 'Clouseu,' made racist and sexist posts . . . ."), 76–86 (describing meetings between third-party individuals), 92 ("It was alleged to have been drawn by Schmidt . . . ."), 94 ("Roberson told him about the Moore incident . . . ."), 115 ("Roberson did not know anything about the training or why Winski required me to take it."), 120–21 ("Winski denied my request, although Roberson had approved it."), 126–27 ("This transfer was done without Roberson's knowledge and consent."), 138–40 ("The Raise the Age project also operated as a

recruitment hub" and describing how other participants were offered "permanent positions at other New York City agencies"), 166 ("[O]ccupants of the building were evacuated from the building because of a fire . . . ."), 169 ("OSA filed the grievance . . . which Winski denied."), 173, 175–78 (describing meetings between third parties), 182–83 (same), 193–94 ("Kaplan was the person, who along with Winski said during April 2019 meetings with Kearns, that he was going to shoot me."), 203–04 (asserting that another black woman was granted an accommodation request without needing to undergo a fitness for duty examination and that she later filed a suit against the NYPD, which settled), 218 ("[T]he [unit's] average time it took to do a desk audit from the time of the request was thirty days."), 228–29 (asserting that Roberson filed a complaint on her behalf), 233 ("Nothing was done to address those complaints.").

Plaintiff's declaration is also rife with statements that contradict or wholly depart from Plaintiff's previous statements under oath at her deposition or the objective evidentiary record. *See* Dkt. No. 145 at 17–19 (listing examples). Under Second Circuit precedent, Judge Cave was entitled to disregard such statements. *See Knox*, 134 F.4th at 49 n.3; *Payne v. Cornell Univ.*, No. 21-109, 2022 WL 453441, at *1–2 (2d Cir. 2022) (finding that the district court properly disregarded portions of the plaintiff's declaration containing "hearsay, conclusory assertions not based on personal knowledge, and statements contradicted by [plaintiff's] own previous deposition testimony").

Judge Cave was accordingly correct that summary judgment was appropriate on points where the only "evidence" was Plaintiff's unsubstantiated and contradictory statements. *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 86 (2d Cir. 2019) ("[I]n the rare circumstance where the plaintiff relies almost exclusively on her own testimony, much of which is contradictory and incomplete, to establish a triable issue of fact, it may well be impossible for the court to

determine whether the jury could reasonably find for the plaintiff, and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account."); *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) ("[S]ummary judgment is proper where there is nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony."); *Cf. Grimes-Jenkins v. Consol. Edison Co. of N.Y.*, No. 16-CV-04897 (AT), 2021 WL 1226658, at *4 (S.D.N.Y. Mar. 31, 2021) (declining to disregard Plaintiff's affidavit where it "generally include[d] citations to the record"). In any event, nothing Plaintiff points to as having been "ignored" would change Judge Cave's legal determinations, even if the statements could have been properly accepted.

**2. Title VII and Section 1983 Claims**

Having removed Plaintiff's evidentiary concerns from the equation, Plaintiff's remaining objections on the Title VII and Section 1983 claims—including her objection to Judge Cave's finding that Winski and Caggiano are entitled to qualified immunity, for which Plaintiff asserted no legal or factual arguments—are largely conclusory and rehash arguments made before Judge Cave. Judge Cave's analysis of Plaintiff's Title VII and Section 1983 discrimination claims was not erroneous, and the Court reaches the same result analyzing these claims *de novo*.

Qualified immunity under 42 U.S.C. § 1983 shields government officials from civil liability unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Summary judgment for defendants on qualified immunity grounds is appropriate "if the evidence is such that, even when it is viewed in the light most favorable to the plaintiff and with all permissible inferences drawn to his favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right." *Turner*

*v. City of New York*, No. 18-CV-09626 (NRB), 2019 WL 6173701, at *6 (S.D.N.Y. Nov. 19, 2019) (quoting *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003)).

Plaintiff alleges that Defendants violated her clearly established rights to be free from discrimination and retaliation in the workplace. *See Penz v. Fields*, No. 21-CV-00005 (VB), 2021 WL 5507249, at *6 (S.D.N.Y. Nov. 23, 2021) (recognizing the right to be free from workplace discrimination as clearly established). Officers Winski and Caggiano would therefore not benefit from the shield of qualified immunity if a reasonable officer would have known that their conduct toward Plaintiff violated her constitutional rights.

Like Judge Cave, this Court finds that a reasonable officer would not have known that, under the circumstances, transferring Ms. Jennings to different units or making the remarks described in the parties' papers would violate her constitutional rights, particularly seeing as there is no indication whatsoever that either officer harbored a discriminatory or retaliatory intent. *See, e.g.*, *Bernstein v. Village of Wesley Hills*, 95 F. Supp. 3d 547, 585 (S.D.N.Y. 2015) (granting summary judgment for defendant where plaintiff failed to raise an issue of material fact as to whether defendants acted with discriminatory animus). As such, Officers Winski and Caggiano are protected under the doctrine of qualified immunity.

As to the discrimination claims, each requires a threshold showing under the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). Plaintiff asserts that the following actions constitute "adverse employment actions" under *McDonnell Douglas*: (1) August 15, 2019 transfer from PAS to CAD's Administrative Support Unit (the "First Transfer"); (2) August 10, 2020 transfer to CAD's Human Resources Section (the "Second Transfer"); (3) August 25, 2020 transfer to the Human Resources Division's Promotions and Upgrades Unit (the "Third Transfer"); (4) May 2021 transfer to the Military and

Extended Medical Leave Desk (the "Fourth Transfer"); (5) June 2022 assignment to the Bronx Tow Pound (the "Fifth Transfer"); (6) the requirement that Plaintiff participate in a Fitness of Duty evaluation, which led to the closing of her Accommodation Request after Plaintiff denied participation ("FOD Evaluation"); and (7) a February 28, 2019 report filed by Plaintiff's former supervisor ("2019 Report"). Dkt. No. 141 at 20–24.

The Court agrees with Judge Cave's findings that Plaintiff "failed to come forward with evidence creating a genuine issue of material fact as to whether the First through the Fourth Transfers resulted in a disadvantageous change to her responsibilities even under *Muldrow*'s lower bar" and that Plaintiff failed to assert sufficient evidence that the Fifth Transfer was made under an inference of discriminatory intent. R&R at 17, 25; *see also Muldrow v. City of St. Louis*, 601 U.S. 346, 350 (2024) (holding that a Title VII plaintiff need only show "some harm"). The Court likewise agrees with Judge Cave's conclusions that the 2019 Report and FOD Evaluation did not constitute adverse employment actions as a matter of law: Plaintiff has not established any disadvantageous consequence flowing from either the 2019 Report or the FOD Evaluation. R&R at 18–20.[2]

**3. NYSHRL and NYCHRL Claims**

Plaintiff objects to Judge Cave's recommendation on her NYSHRL claims because, she asserts, Judge Cave applied the stricter federal framework instead of the "same broad and more liberal standard applicable to NYCHRL claims." Obj. at 15–16.

[2] Plaintiff also objects to Judge Cave's "exclu[sion] . . . [of] relevant background evidence of discriminatory conduct." Obj. at 16. But no "background evidence," even if it could be potentially relevant to discriminatory animus or intent, can change the fact that an "adverse action" must occur within the statutorily permitted window. *See Kocar v. Port Auth. of N.Y. & N.J.*, No. 19-CV-11508 (AT), 2022 WL 624070, at *5 (S.D.N.Y. Mar. 2, 2022). Nor would it change the determination that there is no nexus between the Fifth Transfer—the only potential "adverse action"—and any possible inference of discriminatory intent.

As to her discrimination NYSHRL claims, Plaintiff is correct that the federal framework for analyzing Plaintiff's August 10, 2020 and June 2022 transfers is no longer operative and that the Court should instead apply the more lenient NYCHRL framework to these claims. *See Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122–23 (2d Cir. 2024) (explaining that the NYSHRL was amended in 2019 to "align with the NYCHRL's more liberal pleading standard"); *see also, e.g.*, *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 451 (2024) (construing NYSHRL and NYCHRL claims together). Indeed, the 2019 amendment directs courts to construe the NYSHRL "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL], have been so construed." N.Y. Exec. Law § 300.

Plaintiff is incorrect, however, in her suggestion that the NYCHRL standard applies to her NYSHRL retaliation claim. The only retaliation claim that survived Defendants' motion to dismiss was Plaintiff's April 2019 transfer. *See Jennings v. City of New York*, No. 22-CV-01885 (GHW) (SLC), 2023 U.S. Dist. LEXIS 35325, at *52–57 (S.D.N.Y. Jan. 26, 2023), *adopted,* 2023 U.S. Dist. LEXIS 34317, at *5 (S.D.N.Y. Mar. 1, 2023). The amendment to NYSHRL took effect on August 12, 2019, after Plaintiff's April 2019 claim arose. *See* 2019 N.Y. Laws 6 (A. 8421); *Golston-Green v. City of New York*, 184 A.D.3d 24, 35 n.1 (N.Y. App. Div. 2020) (noting that the "amendment was made to be effective August 12, 2019").

In any event, application of the lower NYCHRL-analogous standards would not change the outcome. Plaintiff's NYSHRL discrimination *and* retaliation claims still fail for the reasons articulated in Judge Cave's R&R. As Judge Cave found with respect to Plaintiff's NYCHRL discrimination claim, she "has not demonstrated that a reasonable jury could infer that race was even a partial motivating factor in the Fifth Transfer"—the only action that Judge Cave (and this

Court) consider potentially adverse. R&R at 28. As to Plaintiff's NYCHRL retaliation claims, Judge Cave correctly found that "because Ms. Jennings requested a transfer out of PAS and she did not show that her transfer out of PAS reduced her responsibilities . . . she cannot claim that the First Transfer was a retaliatory act that would have deterred her from making the EEOD Complaint." R&R at 34. Because Plaintiff's NYCHRL discrimination claim fails, so too must her identical NYSHRL claims, which are assessed under the same framework. Plaintiff's NYSHRL retaliation claims likewise fail for the reasons Judge Cave articulated in the R&R.

Aside from the blanket objections already addressed, Plaintiff makes no objections to Judge Cave's findings on her federal retaliation claims. The Court has reviewed them for clear error and found none, and a *de novo* review would reach the same conclusion because there is no genuine dispute of material fact as to whether Defendants had knowledge of Plaintiff's protected activity or as to whether the First Transfer resulted in a disadvantageous change in Plaintiff's employment.

Accordingly, Judge Cave's analysis and recommendation as to Plaintiff's Title VII and Section 1983 discrimination and retaliation claims are ADOPTED, and Defendants' Motion for Summary Judgment is GRANTED as to those claims.

**B. NYCHRL Hostile Work Environment Claim**

Plaintiff objects to Judge Cave's findings on her hostile work environment claims for a number of reasons. First, Plaintiff claims that Judge Cave was incorrect to discount her gender-based hostile work environment claim. Obj. at 23–24. Next, Plaintiff objects to Judge Cave's exclusion of the City of New York as a Defendant for this claim and to Judge Cave's finding that the continuing violation doctrine does not apply. *Id.* Plaintiff, lastly, reiterates that she did present sufficient evidence for her hostile work environment claim to survive. *Id.* at 26. The Court will address each objection in turn.

*First*, Judge Cave correctly determined that Plaintiff effectively abandoned her gender-based hostile work environment claim by failing to assert any legal arguments on that point in her summary judgment opposition. R&R at 37 n.10. Plaintiff offered nothing in her brief to rebut Defendants' arguments that she failed to set forth a gender-based hostile work environment claim—instead, she frames her hostile work environment claim solely around her *race*. For example, Plaintiff asserts that Defendants "punish[ed] her for conduct that was overlooked when engaged in by a non-African American" and that Defendants' conduct "resulted in Plaintiff being treated less well than the Caucasian ASAs and other Caucasian employees, *because of her race*." Dkt. No. 141 at 25–26 (emphasis added).

In contrast, the only nod to gender in this section is Plaintiff's unsupported statement that "[u]pon her return to DCAS, [Defendants] . . . removed her as head of CLU and replaced her with two Caucasia[n] male employees, one of who[m] she had to train." *Id.* at 26. A mere declaration that one was "replaced" by someone of the opposite gender is insufficient to make a gender-based hostile work environment claim, particularly when that assertion is unsupported by record evidence and untethered to any legal argument. Judge Cave was therefore correct in her finding that Plaintiff abandoned her gender-based NYCHRL claim. *See, e.g.*, *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[A] court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue . . . which provides an independent basis for dismissal."), *aff'd*, 130 F.3d 1101 (2d Cir. 1997); *Douglas v. Victor Cap. Grp.*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (deeming claims alleged in the complaint abandoned where "Defendants' summary judgment motion specifically

addressed all of [the] claims," but the plaintiff's "opposition papers . . . addressed none of [the] claims," and collecting cases where courts have similarly deemed claims abandoned for failure to defend them in opposition to summary judgment); *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

*Second*, Plaintiff takes issue with Judge Cave's failure to expressly include the City of New York as a defendant in her analysis of the NYCHRL hostile work environment claim. Obj. at 15. But the City is "an artificial entity that can only act through people." *Simpri v. City of New York*, No. 00-CV-06712 (SAS), 2003 WL 23095554, at *10 (S.D.N.Y. Dec. 30, 2003). Thus, Plaintiff's claims against the City of New York are duplicative of her claims against Winski and Caggiano in their official capacities. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."); *O'Connor v. Pierson*, 568 F.3d 64, 71 (2d Cir. 2009) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 264 n.2 (S.D.N.Y. 2006) ("An official-capacity suit is . . . to be treated as a suit against the entity . . . . Where, as here, the entity also is named as a defendant, the official capacity claims are redundant and are properly dismissed."). Judge Cave correctly collapsed Plaintiff's claim against the City of New York into Plaintiff's claim against Winski and Caggiano in their official capacities, and the failure to explain in detail such a clearly established legal principle is not error.

*Third*, Plaintiff objects to Judge Cave's determination that the continuing violation doctrine does not apply to Plaintiff's hostile work environment claims. Obj. at 24. Plaintiff provides no support for this objection, other than to say that certain conduct should have been considered under the theory. *Id.* at 24–25. Plaintiff merely repeats that, in her view, she did state claims for retaliation; this is insufficient because Plaintiff identifies only various isolated incidents, none of which have an established discriminatory valence, and she challenges no ongoing policy of discrimination. *See, e.g.*, *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (requiring an "ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy"); *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 50 (S.D.N.Y. 2019) ("Examples of discrete acts, for the purposes of the continuing violation doctrine, include disparate disciplining, negative performance reviews, termination, failure to promote, and denial of a preferred job position."); *Everett v. N.Y.C. Dep't of Educ.*, No. 21-CV-07043 (JPC), 2022 WL 2342693, at *5 (S.D.N.Y. June 29, 2022) (same); *see also Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (noting that "the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances."); *Gandarilla v. Sanchez*, No. 07-CV-06909 (LTS), 2012 WL 3525607, at *6 (S.D.N.Y. Aug. 15, 2012) ("The continuing violation doctrine . . . applies to claims brought under the NYSHRL and NYCHRL.")..[3] Judge Cave correctly declined to apply the continuing violation doctrine to Plaintiff's hostile work environment claim.

---

[3] Plaintiff is correct that the Court may consider time-barred acts—only as "background evidence in support of a timely claim"—but, as explained *infra* n.2, any adverse or discriminatory action must be within the statutorily permitted time period. *See Solomon v. Fordham Univ. Admin.*, No. 22-887, 2023 WL 5689712, at *2 (2d Cir. 2023). No consideration of background evidence changes the Court's analysis and conclusion that Plaintiff failed to state a claim for hostile work environment.

***

In the absence of any objection to the remainder of the R&R, the Court has examined it for clear error and has found none.

**CONCLUSION**

For all of the foregoing reasons, it is hereby ORDERED that Magistrate Judge Cave's February 3, 2026 Report and Recommendation at Dkt. No. 151 is ADOPTED IN ITS ENTIRETY. Accordingly, Defendants' motion for summary judgment is GRANTED in its entirety. The Clerk of Court is respectfully directed to enter judgment for Defendants and CLOSE this case.

Dated: September 22, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge